on behalf of the abalone. Mr James Helio on behalf of the abalone, Mr Robert O'Donnell.  Thank you, Your Honor. May it please the court. My name is James Helio. I represent Mr and Mrs Johanneson. We are the appellants and we seek reversal of the trial court's entry of judgment dismissing my client's breach of contract claim against Mr Eddins based upon the application of the Illinois Citizens Participation Act. Sometimes referred to as the Anti-SLAPP Act. There are four important, I believe compelling reasons why this case should be reversed. The Anti-SLAPP Act legislation called the Illinois Citizens Participation Act here in Illinois. Those kinds of acts have been adopted across the country. This court has ruled on it. They're relatively new statutes. And the reasons why it should not be applied here is because one, the acts of Mr Eddins in his ex-party communications with the village manager, the village of Hinsdale, was not in furtherance of any constitutionally protected right. Let me just stop a minute. Sure. An ex-party communication is kind of an interesting concept. They're usually considered forbidden. I mean, he had, as a citizen, he could have talked to anybody he wanted to, correct? Generally. So the fact that he talked to them outside of the presence of the other party is not the issue. It's the fact that he had the communication at all. Your Honor, I don't, to me, he could talk to anybody he wants, but it's not an act in furtherance of a constitutional right that's protected under the Anti-SLAPP Act or the Illinois Citizens Participation Act. The constitutional right to free speech or to petition the government is not an absolute right. It's a conditional right. And villages, legislatures, courts, all have the power, and it's well recognized, to set procedures, limitations, and how you go about petitioning the government properly. Well, he's not crying fire in a crowded theater. He's going to the city manager or the zoning manager and saying, look, I think some of my property is going to be taken if this house is this big or this close. And so why doesn't he have the right to talk to the, without the contract, without the other issues, why doesn't he have the right to talk to that, those parties? I don't think that's protected activity because he didn't follow the rules. Because, in effect, he is denying my client's right to be heard on that issue. There are procedures in the village of Hinsdale and elsewhere where if you want to go and make your petition, you want to make your speech, go ahead. But put it out there so that there can be a robust debate, so it can be responded to. So because he didn't make these comments at the zoning hearing where the variances were allowed, but made the comments to Mr. Cook off the record or in his office, that's the problem you're having? That's one problem I'm having. Because even if he did it totally correctly, totally openly, and he went to the zoning board and put it in writing and put it out there, he still wouldn't have the protection of the anti-slap act because he waived any right he had to otherwise petition the government on this matter. Before we leave that one point that Justice Hutchinson was talking about, there's a case, and these cases are all running together in my mind right now, where an individual speaking to a news reporter was found to be within the slap act. So that seems to cut against your argument that it has to be in some type of a formal setting where you have to talk about, try to get the government to do what you want. Well, there's two things. One is the petitioning the government. The example you've given is more of a First Amendment right, free speech right, and that can be subject to the purview of the anti-slap act. In this case, what Mr. Adams did is say he's protected because he was petitioning the government. Petitioning the government, you have certain things you have to do if you're petitioning the government. He's never alleged a First Amendment right in his motion to dismiss. But I can even further, when you talk about First Amendment rights, they're not absolute. They are conditional. The United States Supreme Court has said that. This court has said that. In the Gaylor case, this court recognized it's a fundamentally accepted principle that you can waive or contractually agree not to assert constitutional rights, which brings me back to the waiver issue. But to address the First Amendment issue, Your Honor, the First Amendment is not absolute. If you're going to talk to, for example, if you're going to talk to this court, say a litigant calls you up and wants to talk to you about his case, that's free speech. But that's not permitted. No one in the world would say you can do that, you're protected under the anti-slap act because it's free speech. If you have a system of government where there's a lot of rights involved, it's not just the right to speech or the right to petition the government, there's a right to due process. Those are a number of rights that come, you know, they all come into conflict every now and then. And it's the job of the courts then to sit back and say, okay, let's balance this situation and let's understand what's protected constitutional, what's acts on furtherance of a legitimate constitutional right. That's Mr. Adams' burden in the first place. We would come back, and this gets me to my second reason, and say that his conduct was not genuinely aimed at procuring favorable government action. Counsel? Yes. I believe Mr. O'Donnell filed, or at least the defendant filed, a 2619 and a 2615 motion. Correct. And I believe that the trial court found that the slap act applied, which would suggest that 619 would be applicable because it's an affirmative matter that supposedly precludes relief. Now, a 2619 motion is supposed to be based upon facts easily proven. Right. Okay. What facts were easily proven here? Well, the contract, for example, which is alleged, again, a motion to dismiss, whether it's 2619 or 2615, our well-pled allegations are assumed to be true. We also verified it, and so there's evidence, there's nothing from the other side on any factual presentation. Well, what if we reverse and are demanded back for trial? Is it your position that the defendant can't attempt through an affirmative defense to establish that slap or anti-slap applies? He can try. But I'll take that in a trial court, in an appellate court, anywhere. This act does not apply to a claim for breach of an oral contract. Well, your point is you've made allegations of a contract. Yes. At a trial, you have to prove it. I will prove it. Yes, Your Honor. You see, Mike, the point, the difference between a hearing on a motion under 619 where there are material issues of fact similar to a motion for summary judgment, which may preclude a 619 motion on the basis that, for instance, you're talking about ultimate issues of fact, you're talking about complex issues of fact, you're talking about legal conclusions that are going to be based upon the totality of the evidence at trial. So the point is, is that assuming that you're correct, are you going to contest and claim that this has been determined as a matter of law, that anti-slap doesn't apply, or are you going to contend or at least agree that the defendant has the opportunity at trial to raise an affirmative defense? Your Honor, I'm not going to intrude on what you do. I know what I would do. I would say, this is barred. You cannot do it. You cannot argue anti-slap because it's not enacted further into the Constitution. It's not generally aimed at procuring favorable outcome. And even if it were, it was waived and the retroactivity should not be applied as a matter of law. But, Your Honor, I will do that anyway. I just want an opportunity to prove our case, which is a legitimate, important case. And frankly, this law needs to be shaped by judicial provings. So there is a waiver and an estoppel? Yes. There is a difference. Does estoppel apply in this case? It would. Yes, it does. But it's easier to prove waiver. It applies because we acted to our detriment. We moved the proposed house based on the oral agreement with Mr. Edmondson. They didn't move it to your plans. The proposed plans suggested a different location. And we incurred cost in doing that. And therefore, you relied thereon and now you shouldn't be put in a position. Correct, Judge. But it's a contract issue, too. The waiver comes into this constitutional right. You can waive constitutional rights. In fact, it's done in this kind of a case. There's a case that we cite, the Barnstead case, not from Illinois, where two parties agreed and one part of the agreement was we're not going to file any pleading, we're not going to file any objection in any regulatory agency, we're not going to do anything to interfere with your construction of a television station. Two parties agreed. The S&E of one of the parties files an informal objection with the FCC. The other party sues Metro Vision, the television contractor sues to say you can't do that. It's a breach of contract. The other party, the S&E, says hey, I've got a free speech right to file an objection to this television station and I intend to do so. And the court found you waived that right. First Amendment rights can be waived just like other constitutional rights can be waived. And if you contractually waive that right, the anti-SLAPP Act doesn't apply because it's not our lawsuit. It's not a lawsuit to retaliate against the lawful act of an act in furtherance of a constitutional right because you waived it. Just simple settlement agreements would be impacted by this court's ruling. If you have a claim against, say we had a claim against Mr. Eddins, unrelated to zoning, just a claim and it was settled before trial and then a party sues or does something in violation of that settlement agreement and you bring an action, you breach the settlement agreement. They say, I can file a suit any time I want. I have a right to petition the government. The anti-SLAPP Act protects me. And I say, but you released us. You settled this case. I don't care. I can sue you because petitioning the government is one of the constitutional rights that is protected by the Illinois Citizens Participation Act. So we need this court's guidance on this. This anti-SLAPP Act cannot be used to eradicate real rights that people have and where a constitutional protection that might otherwise have existed has been waived. This is an important case that has never been done in any case in this country. There's not a reported decision where the party who is claiming protection of the anti-SLAPP Act has contractually waived the constitutional right involved. It's never been done and shouldn't be done. There's another part of this, and that's the genuinely aimed at procuring a favorable government action. This court in the Sandholm case recognized that when you try to interpret that part of the anti-SLAPP Act, the genuinely aimed at procuring favorable government action, you look at it, you adopt the principles developed in the Norbert Pennington Doctrine, which basically is the petitioning the government. Petitioning the government is a protected activity, but again, not an unlimited protected activity. You have to look at first seeing two things. There's two categories. Is it a legislative? Is your petitioning activity involved in the legislative aspect or in the adjudicatory aspect? And it's important differences because in the legislative category, you've given broad protections. You can lie, you can defame, you can do whatever you want in that context because the court says that's open legislative activity. That's a robust debate we can fix through the debate, whatever harms might be caused by the communications. Adjudicatory is a little different because adjudicatory involves the application of principles to past acts or present acts, not prospect. Just as Oliver Wendell Holmes described that difference in the Norbert Pennington context by saying legislative looks to the future, adjudicatory looks to the application of principles to the past. What we have here is adjudicatory because we are having him communicate with a village manager who is charged with deciding whether the zoning interpretation applies. I think that indicates my time is up. One other point is the route to activity. I don't think this one. Thank you. Mr. O'Donnell, you may proceed. Thank you, Your Honor. I'd first like to address the council's argument as to whether or not the act even applies to the conduct alleged. I would submit to the court that this is by definition a classic case where the where the slap anti slap act should apply. Because, as alleged by the plaintiff in their complaint when describing the alleged harmful conduct, they allege, quote, prior to and after June 21st, 2006, Edens engaged in a series of ex parte conversations with David Cook, the village manager, with the goal, with the goal to overturn the building department's previous approval of the front yard setback calculation. So that allegation in and of itself, if you strip away the notion that there's something wrong with a conversation with one's building, with one's village manager, you strip away the ex parte aspect of it, you have a conversation and you have a conversation for the purpose or with the goal of as alleged overturning a building department determination of a front yard setback. That satisfies the requirement that the conduct of the defendant here be genuinely aimed at procuring favorable governmental action. Does it matter that it's ex parte in what counsel describes as the adjudicatory situation? In fact, Your Honor, the answer is no, and I would suggest to the court that the fact that it was ex parte screams out for protection. Because if an ex parte communication, which has this connotation of wrongful, but in fact here, that would mean that a citizen cannot knock on the door of the village manager and have a conversation along the lines of Mr. Village Manager. You know, my next door neighbor is suggesting to me that he has a determination by the building department of a front yard setback. And, you know, I just, I don't know if that's a correct determination or not or whether that's done by the building department or done by you. And the building and the village manager takes a look into it and finds, geez, if that is in fact the case, it's not correct. So that sort of informal, permissive communication with one's government is exactly the sort of protection that Section 5 of the Act in enunciating the public policy is designed to protect. Now, I think there's an important distinction here between what the plaintiff argues and claims and what they allege in their complaint. Counsel mentioned the Minnesota case. That's the Stengrum case, and that's one of those cases where the court recognized that there had been by written unequivocal agreement in the context of the settlement of litigation of a waiver of this protection. The agreement in that case drew a distinction between a challenge to an administrative or judicial body to challenge an agreement whereby one would forego a challenge. As distinguished from allowing the defendant in that case the ability to participate and have meaningful participation in, it was a water reclamation district meetings on a flood management issue. So the distinction was between a formal challenge and the ability to participate and have meaningful participation in meetings. What's alleged in the complaint here, throughout the complaint, is that what Mr. Adams agreed to do is forego, quote, forego a challenge, end quote. The connotation of it being some sort of formal process that he would file something. But here, if I understand the record correctly, he signed the actual application for variance to the whatever board of Hinsdale that was involved. And that application did not request a different front setback, which is the issue here. Your Honor, all that application requested by the Johanssons was to move, was a side yard setback. They would, a variance of the side yard setback. It was moving the house farther away. Away from Mr. Adams. Away from Ed's house. But they could have asked for a front setback as well, but they relied, according to them, on something your client said and his signature. What they claim to be relying on, because that only addressed the side yard, not the front yard. What they claim to be relying on is a so-called determination by the building department. When, in fact, as we point out, there is no procedure, there is no process in the village of Hinsdale, whereby the building department makes a determination of the appropriate setback for a residence. Well, the code does that, but they're the interpretive body for the code. Well, you're not going to go to the treasurer and say, do I have a setback here? Your Honor, you only go to the Zoning Board of Appeals if you're seeking a variation of the required setback. They didn't seek a variation of the front yard setback. Because they didn't think they had to, based upon the interpretive advice of that same department. It wasn't the, with all due respect. Not the Zoning Board of Appeals, but the enforcement agency. Well, the enforcement agency is either the building manager who makes the determination in the first instance, or the Zoning Board of Appeals. The point is, the building department is not in that loop. The building department has no role in the village of Hinsdale to determine the appropriate front or side yard setback. So then when they go out and issue a complaint on someone who's building, that person doesn't need to go to court and respond because they have no authority to issue that complaint? Well, Your Honor, that's a different circumstance. How? Because in this instance, it's what do you do before you proceed to get your building permit. If you want a determination from the village as to what the appropriate setback would be, the process in the village is you go in the first instance and only to the village manager. The village manager will give you that determination either upon written request or in the context of his issuing what's called a Certificate of Zoning Compliance. You get that from the village manager. You then would proceed to submit your permit application, taking that information into account and addressing it in the context of your permit application. All right, but what does the building manager do in order to do that? He looks at the code that exists, and he goes to the building department and says, What does this mean? I don't think so, Your Honor. Well, that's what he did here. He did not. Afterwards, I thought that's what he did. How did you arrive at this? What occurred first is the so-called determination by the building department, which in fact doesn't exist in the Hinsdale Code. Based upon the so-called ex parte communication, Mr. Cook, the village manager, issued a determination stating that, stating what the appropriate front yard setbacks were. Well, he said he'd check into it, and what did he do? What did he do? I can speculate, Your Honor. The record isn't. He said that it doesn't exist within the code. Does it exist in real life? Is there a building department in Hinsdale, or does it not exist? There is a building department, Your Honor, but the requirements are when one seeks a determination of any sort before building a structure or a development of any sort, all of the issues attended to that would either be posed in the first instance to the village manager for a determination. That's what it's called, a determination. So when these plaintiffs went to the building department to get the information, the building department didn't tell them what you're just telling us? I don't know. But they claim they have a determination. Interestingly, there's nothing in this record. They attach no writing, nothing that evidences this determination other than the allegation. So I don't know. This isn't a summary judgment. I mean, this is a judgment on a two-volume record on the 619 based on the SLAPP Act. Correct. And you also had a 615 motion. Correct. So we have to take all these facts as true right now, and the facts we're taking as true is that these folks went to the building department. The building department told them so many feet. They relied on that. They went to your client. They said, The building department tells us this many feet. So will you go along with that? Your client pointed the complaint and says yes. So we have an agreement that we either do or we don't, but that has to be proven in court. That's incorrect, Your Honor, and if I can correct that. When they went to my client, they didn't go to my client and say, Would you accept the building department's determination? That isn't what they allege. What they allege is that there was an agreement whereby my client would not, because as alleged in the complaint, my client did not agree and had expressed his disagreement with the building department's determination. What my client is alleged to have agreed to is to, if you will, stand down, to not challenge that determination in consideration for which they would submit an application for a variance of a side yard setback. So he was not asked to. In fact, the complaint is clear that he did not accept the building department's determination. That makes their case even stronger because he doesn't accept that, but he's going to live with it if you give him the side yard. If they give us the side yard. That's what they allege. But the point I make here is that, and again, we have to accept that because that's what they allege to be the case, but there is no case in all of the cases that were cited where there has been some sort of waiver by contract, by agreement. It has been A, in writing, where the courts have conclusively found that that waiver is clear and unambiguous in the writing, clear and unambiguous in the writing, and in each instance it's been in the context of a process, an administrative process before the FCC, a court settlement agreement or a settlement agreement approved by court order or an administrative proceeding. It has not been where someone says, if you will, if you promise to stand down, I'll do something for you. And I'm exaggerating to make a point. I'm not suggesting that that's exactly what was alleged here. Well, the trial court seemed to take the, at least I got the impression, the trial court was saying, yeah, there was an agreement here, but it was against public policy. And therefore, since it was against public policy, the contract couldn't be deemed to be a waiver of any manner, shape, or form. Is that correct? Did he say those things or at least imply those things? He did. And I agree that this contract would be against public policy. How could it be against public policy if the two parties agree that this is where the House is going to go and if it goes here, your client will stand down, as the phrase is? How is that against public policy? When supposedly he's getting some benefit I thought I had read, the benefit was his sight lines would be improved. Is that false? That's what they allege. I mean, that's what they allege. So we have to accept that as true. So I won't respond beyond that. But to answer your question as to whether or not it's against public policy, it is. It is against public policy, and the reason that it's against public policy is that the purpose of a slap suit is not to win the case. Anybody who files a slap suit typically is not looking to win the case. They're looking to intimidate and harass and tie up the defendant in litigation in order to cause that litigant to, if you will, to use the language in this case, stand down, back off, stop the litigation. The question that what they're asking for is the damages that are realized by the change in the location and the size of the house. That doesn't sound like they're trying to make him, quote, unquote, stand down, shut up, go away, and disappear. It sounds like they're actually claiming that what he did caused them additional costs in the construction of the house and the diminution of the use and enjoyment of that property because the house isn't as big or doesn't have as big a footprint as it would have otherwise. That sounds like it's contrary to the policies that slap is supposed to protect. I disagree, Your Honor, for this reason. What they're alleging here is that they... I didn't expect you to agree anyway. They didn't get to build a 13,000-square-foot house. They only got to build a 10,000-square-foot house. And what they're claiming is that they had to locate the house as required by the villager. At this point in the process, was this it? Was there going to be a building permit issue? They don't realize that. This is early on in the process. They didn't have a building permit. They didn't have the right to build but for my client running to the village manager saying, you know, take another look at this so-called building department determination. This sounds like you're arguing damage is approximately caused now, not necessarily anti-slap immunity or waiver or whatever. Judge, the word I use in my brief and I'll use it now is this sort of claim is flimsy. If the exception to the act is granted for an oral agreement where one says to another, hey, if you don't run and object, then I'll do this or that for you. And then we have instances. So no matter how flimsy that claim is, again, the purpose of a slap suit is the lawsuit itself. It's not me. Was this totally oral and totally unexecuted? Yes. Because I believe the allegations were based upon the oral agreement. They actually did something. What? They executed on the oral agreement to the extent that they changed their building plans that they submitted to the village. Well, Your Honor, the request for a variation that they made was removed. So they did not execute follow-through on the so-called consideration they were providing, and that is the variation. They did not. What ultimately happened, as they allege, is that they had to locate their house within the parameters of the front yard setback, which was different than what they had planned. But the consideration for the so-called agreement is to petition to relocate the house. They withdrew that petition, and that's one of the things that the trial court pointed out, is that they did not follow through to do that which they promised to do. But the variation that you're talking about, your client signed on to that. I mean, that's part of the record, correct? He signed on to that one, yes. He signed, and frankly, I don't know what this means, but he signed as anarchist curiae nominal applicant. Well, basically, he signed on as some form of an applicant supporting that petition. So it's not totally oral. I mean, there is some written documentation that he may support. But what there isn't, Your Honor, is written documentation evidencing the agreement. There's written documentation of an application for a different sort of variation, but there's no documentation of the agreement itself, and I understood that to be Justice McClaren's question, whether there was any evidence in writing of this agreement, and I don't believe that there is. I was talking about an oral agreement that was partially executed. The oral agreement was partially executed to the extent that there was an application submitted, yes. In that respect, yes. Changing the position of the house. Changing the position of the house, but again, side yard setback, not front yard setback. The problem that's alleged with Mr. Eden's communication is that it caused the plaintiffs to have to change the front yard setback. Well, maybe they just should have moved it back closer to Mr. Eden so he lost his line of sight. But that would not have been in compliance with what they understood the agreement to be. And the point there, Your Honor, is that they actually did not follow through with that. They submitted the application and withdrew it. Okay, thank you. Thank you. Mr. Filio. Thank you, Your Honor. Just to address a couple of points here. None of the cases have ever had that a waiver of a constitutional right must be in writing. It helps, obviously, to have it in writing, but there's no requirement. It's not a statute of frauds kind of thing. Is there a case that says there's no requirement, or is there just no case that says there is a requirement? Your Honor, I haven't found anything that says it's a requirement or not. Some of the facts are in writing, but I don't think an analysis has ever been made as to whether it needs to be in writing. The fact is we have an oral agreement, and an oral agreement, breach of an oral agreement is actionable. It is not, his conduct was not protected by the Anti-SLAPP Act. We did act in detriment and reliance on the agreement. The agreement is pretty straightforward. It's alleged in our complaint. We verified the complaint. There's corroborating evidence. The suggestion that the building department never considered this is contradicted by the complaint itself. And when we quote from the village manager's memo where he says that the building department determined that the setback would be X, Y, and Z and then proceeds to overrule it. This is, again, the four reasons. It's not a constitutional right because he didn't petition the government in accordance with the rules and procedures for petitioning the government. If he did so, or regardless of whether he did so, it's not genuinely aimed at procuring favorable government action because genuine means that you'd follow the rules, particularly where it's an adjudicatory thing. And the reason for that is so that both sides can have an opportunity to occur. This village manager made this decision without even talking to us because we didn't know it happened until after it was done. And then everything's reviewed on an abuse of discretion. Mr. O'Donnell, the building department doesn't exist under organizational ordinances. And so why did your client even consider the setback that the department supposedly provided? Because that's what you do. When you build a new house, you talk to the building department. I would think that the village manager would have sent you to the building department. It exists. The village manager talks about it in his memo that they made a determination and then he was going to overrule it. He had never overruled a building department determination in his entire career, first time. If a sign goes up on my block saying that they're having a hearing on a variance and I pick up the phone and I call someone on the board and I say I object to this, I don't show up at the hearing, I just call someone, I'm not covered. I'm doing something totally improper by your argument. I don't know. If it's part of the legislative process, probably not. If it's part of an adjudicatory process where they're ruling on a particular – Particular misappropriation. I would think that's wrong unless it's brought out. I should have an opportunity to – Try something to suit if I say something. No. No, you're not, unless you agreed not to do that. I wouldn't have had any problem with – Well, yeah, that's shifting into your third argument. I'm getting at your second argument, which is that you have a certain procedure you have to follow and you're telling me basically if I call somebody on the board or this mayor, I complain and I say I don't want this variance on my block, that I could be subject to suit for making a phone call if I say something improper or whatever. I don't know. I would say that the Anti-SLAPP Act doesn't protect you. I would say that. I don't know if it's otherwise actionable. I think it would depend. I'm just talking about the SLAPP Act. No, I don't think you're protected by the Anti-SLAPP Act. If there's procedures set up for how to do it and you don't follow those procedures and you claim that you're not acting in furtherance of a constitutional right at that point in time, you're free-falling. You're relying on more Pennington cases but not any SLAPP Act cases for that, correct? Do you have any SLAPP Act cases that say that you have to follow a particular procedure if it's an adjudicatory process? There are cases that talk about that in the SLAPP Act. Not exactly on that. Let me talk about that point, that you're following the proper procedure otherwise you're not guilty. Yes, because there's two parts of it. The first is, and they have the burden of establishing that the act complained of was in furtherance of a constitutional right. Now, I don't know if there's a SLAPP Act, but there are definitely cases about petitioning the government. That constitutional right is not absolute. If there's procedures set up, you have to follow them, otherwise it's not constitutionally protected. Therefore, if it's not constitutionally protected, you stop there in your anti-SLAPP analysis because there's nothing to protect. You don't have to go any further. The Norm Pennington thing is the exception where it's a constitutionally protected act, but except it's not genuinely aimed at procuring favorable government action. So there's a separate argument here. Genuinely means you have to do it. If it's an adjudicatory thing, you can't do it. I kind of wanted to get back to the retroactivity because I think it's unconstitutional to retroactively apply a statute after the fact to a contract. It impairs constitutional right to freedom of contract and the common law rule that you don't retroactively apply something to defeat a subsequent right. Thank you very much for your indulgence.